IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| John Lewis Addison, Jr., ) | C/A No.: 5:21-1796-KDW |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| Kilolo Kijakazi, Acting Commissioner of ) | |
| Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). Having carefully considered the parties' submissions and the applicable law, the court affirms the Commissioner's decision for the reasons discussed herein.

I.      Relevant Background

    A.      Procedural History

On March 24, 2020, Plaintiff protectively filed for DIB alleging a disability onset date of December 13, 2013. Tr. 317–23. The claim was denied initially on June 17, 2020, Tr. 239, and upon reconsideration on July 21, 2020, Tr. 249. On August 10, 2020, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 262–63. ALJ Amanda Craven conducted a

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the named defendant in this action.

hearing on December 10, 2020, and testimony was taken from Plaintiff, who was represented by counsel, and Vocational Expert ("VE") Norma Stricklin. Tr. 30–55. The ALJ denied Plaintiff's claim in a decision dated January 6, 2021. Tr. 12–28. Plaintiff requested review of this decision from the Appeals Council. Tr. 308–14. The Appeals Council denied Plaintiff's request for review on April 21, 2021, making the ALJ's January 6, 2021 decision the final decision of the Social Security Commissioner. Tr. 1–5. Plaintiff filed this Complaint seeking judicial review of the Commissioner's decision on June 15, 2021. ECF No. 1.

    B.    Plaintiff's Background

Plaintiff was born on July 7, 1967, and was 46 years old as of his alleged onset date of December 13, 2013. Tr. 346. In his initial Disability Report-Adult form, Plaintiff noted he completed the 12th grade, and he did not attend special education classes or complete any specialized job training, trade, or vocational school. Tr. 340. Plaintiff listed his past relevant work ("PRW") as automotive crew member (Nov. 1997–Oct. 2014) and military infantry (July 2000–Aug. 2011). *Id.* Plaintiff indicated he stopped working on October 2, 2014, because of his medical conditions which he listed as: PTSD, degenerative disc in back and knees, diabetes, peripheral neuropathy, bipolar, depression, anxiety, and high blood pressure. Tr. 339. He indicated he is 5'9" tall, weighed 190 pounds, and his conditions caused him pain or other symptoms. *Id.*

In a Disability Report-Appeal dated July 5, 2020, Plaintiff indicated he had continuous changes in his medical conditions explaining his knees were deteriorating, he had a spinal injury, and the cartilage in his neck and lower back were deteriorating. Tr. 390. Plaintiff also indicated there had been a change in his daily activities stating, "Depends on what I do. I go to see mom,

sister or grand kids, I don't mingle other than that. I try to stay by myself. I see my girlfriend as well. I do go to the grocery store and church when it is open." Tr. 393–94.

In a subsequent Disability Report-Appeal dated August 11, 2020, Plaintiff indicated there had been no changes in his physical or mental conditions. Tr. 400. However, Plaintiff stated he was diagnosed with a new physical condition of neck and back pain and degenerative disc disease of his spine on November 3, 2019. *Id.* Plaintiff noted there had been changes in his daily activities stating, "My activities are a little worse. Depends on what I am doing. Pain can go from excruciating to numb. I hurt all day long. My neck, lower back, and knees hurt when I am not doing anything. When I get up and start moving around the pain gets worse. If I rest and stand up then move around the pain comes back. I am having trouble sleeping with my PTSD. My anger can go from 0-100 in a few seconds." Tr. 403.

    C.    Administrative Proceedings

On December 10, 2020, Plaintiff appeared with counsel for his administrative hearing in Greenville, South Carolina and testified regarding his application for DIB. Tr. 30. VE Stricklin also appeared and testified at the hearing. *Id.* Due to the extraordinary circumstance of the Covid-19 pandemic the hearing was conducted telephonically. Tr. 33. At the start of the hearing, Plaintiff's counsel indicated Plaintiff was amending his onset date to August 13, 2018. Tr. 35.

    1.    Plaintiff's Testimony

In response to questions from the ALJ, Plaintiff stated his date of birth was July 7, 1967. Tr. 36. Plaintiff confirmed he was 53 years old, and he completed high school. *Id*. Plaintiff stated he last worked on October 7, 2014, and he was employed by Drive Automotive where he did logistics, loaded and unloaded trucks. *Id.* Plaintiff stated he operated a sit-down forklift. Tr. 37. Plaintiff confirmed he was in the Army Reserves, and he was deployed for a year to Afghanistan

where he was a gunner. *Id.* Plaintiff stated he did a lot of standing while doing this job. *Id.* The ALJ explained she had Plaintiff's PRW as forklift operator and gunner in the military and the VE indicated she did not have any questions about those jobs. *Id.*

In response to questions from his attorney, Plaintiff testified he is right-handed, 5'9" and he currently weighs 195 pounds, although his normal weight is 225. Tr. 38. Plaintiff stated he stopped working after he received a letter from the VA stating he was 100% permanently disabled and unemployable. *Id.* Plaintiff said he went to the VA after receiving his letter, and they told him he had to stop working. *Id.* Plaintiff stated he was awarded disability because of his PTSD, left and right knee, degenerative joint disease, diabetes, high blood pressure, and neuropathy. Tr. 39. Plaintiff indicated he was having problems with his knees, neuropathy, diabetes, and high blood pressure while he was working, but the main problem was his PTSD. *Id.* Plaintiff said his PTSD caused him to get angry sometimes, threaten people, and "lie at people." *Id.* Plaintiff stated his PTSD is keeping him from working, but he also has problems with his knees and degenerative disc disease in his cervical and lumbar spine. *Id.* Plaintiff stated he has a driver's license and the most he has driven is maybe two hours. *Id.* Plaintiff indicated when he drives too long his knees, back, and neck ache when he gets out of the car. *Id.* Plaintiff said he has road rage and when he drives he often gets on the horn and honks at people. Tr. 40. Plaintiff stated he buys his groceries online and he goes to the store and the groceries are brought to his car. *Id.* Plaintiff said he also purchases his clothes online. *Id.* Plaintiff indicated that in a typical day, he sits around the house, watches tv, and plays games on his phone. *Id.* Plaintiff stated he also washes dishes, does a little vacuuming, and cooks breakfast, and he uses the microwave a lot. *Id.* Plaintiff stated he sleeps about four hours a night and he still has nightmares. Tr. 40–41. Plaintiff said he takes naps during the day. Tr. 41. When asked how far he can walk comfortably, Plaintiff stated the pain is always

there and goes from annoying to excruciating to numb when he is sitting. Tr. 41. Plaintiff said it could be 2 minutes or 15 minutes. *Id.* Plaintiff stated he wears hinged knee braces and diabetic inserts in his shoes. *Id.* Plaintiff said he can stand comfortably for 5 to 10 minutes but he is not pain free. Tr. 41–42. Plaintiff was asked about sitting in a chair and he stated he was presently experiencing pain in his neck, and a little bit in his lower back and knees from sitting. Tr. 42. Plaintiff said he was told neck surgery would not relieve his pain and they wanted him to wait to do spinal surgery until he cannot lift anything. *Id.* Plaintiff stated his neuropathy pain was still present in his arms, hands, feet, lower legs, and shoulders as a burning tingling feeling, and sometimes pain. *Id.* Plaintiff indicated the neuropathy pain sometimes makes it difficult for him to grip things. Tr. 42–43. Plaintiff was asked how his PTSD was today, and he stated it was ok for now. Tr. 43. Plaintiff stated he still has panic attacks at home and when he goes out, but they are worse when he goes out and he is more hypervigilant. *Id.* Plaintiff was asked if he was scheduled for carpal tunnel surgery, and he indicated he is going to get it scheduled. *Id.*

In response to questions from the ALJ, Plaintiff indicated he is having problems mostly with his left shoulder and has lost the ability to lift it. Tr. 43–44. Plaintiff stated he has been given exercises for his shoulder and his legs to keep his strength up. Tr. 44. Plaintiff indicated he can reach in front of him without causing pain in the shoulder, but the pain is still there. *Id.* Plaintiff stated he can also reach over to the side but sometimes because of the strength in his left he is not able to pick up anything and hold it up. *Id.* Plaintiff said he has had problems with his hands for 3 or 4 years; they shake, and he has pain that runs up his arms to his shoulders, and he cannot grip. *Id.* Plaintiff indicated he was informed he needs to stay active, so he exercises. *Id.* Plaintiff said he walks about a mile for exercise although he is in pain. *Id.* Plaintiff stated he has a 16-year-old who lives with his ex-wife, and three grandchildren, ages 7, 5, and 2. Tr. 45. Plaintiff said

5

when he has his grandchildren, they mainly sit, and he may take them to the park and watch them play, and when they are in the house, they are mainly on electronics. *Id.* Plaintiff indicated he takes them to the park by himself as long as it is not crowded. *Id.* Plaintiff was asked about a pending assault and battery charge from June, and he stated he and his son were picking up his grandkids and he had some words with individuals who showed up at his ex-wife's house to fight her. Tr. 46. Plaintiff stated when the officers arrived at the scene, one of the individuals told the officers he feared for his life. *Id.* When asked about his carpal tunnel surgery, Plaintiff stated he received a call a few weeks ago to set up an appointment for a consult and the surgery. Tr. 47. Plaintiff indicated that was what his last neurosurgery appointment was about. *Id*. Plaintiff stated they also talked about doing surgery on his spine, but not until it gets to the point where he cannot grip anything and hold it. *Id*.

2. VE's Testimony

The VE identified Plaintiff's PRW as forklift operator, Dictionary of Occupational Titles ("DOT") 921.683-050, medium, semi-skilled, SVP 3. Tr. 49. The VE testified there were no skills from this job that would transfer to sedentary or light work. *Id.* The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work history with the following limitations:

> For hypothetical number one, I would like for you to consider an individual who is limited to light work. That's lifting 20 pounds occasionally, and ten pounds frequently, can sit, stand, and walk six of eight hours each. The individual can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, can occasionally balancing, stoop kneel, crouch and crawl. The individual can frequently reach in all directions with the left upper extremity.
>
> Can frequently handle and finger bilaterally. Can have no more than occasional exposure to vibration. No exposure to hazards such as unprotected heights and moving machinery. Can perform simple, routine tasks with a reasoning level of two or less performed in 2-hour blocks of time. No public contact in the workplace and no more than occasional contact with coworkers. The individual

6

>can work in proximity to others, but cannot participate in team type activities. The individual is limited to only occasional routine changes in work settings and duties.

Tr. 49–50. The ALJ asked would the hypothetical individual be able to perform Plaintiff's past work, and the VE testified those limitations would exclude Plaintiff's past work. Tr. 50. The VE provided the following examples of available jobs: housekeeper, DOT number 323.687-014, SVP:2, unskilled, light, 200,000 in the national economy; laundry worker, DOT number 302.685-010, SVP:2, unskilled, light, 22,000 in the national economy; and merchandise marker, DOT number 209.587-034, SVP:2, unskilled, light, approximately 120,000 in the national economy. Tr. 51. The ALJ noted the laundry worker job showed handling and reaching at constant and asked the VE to substitute a job for the laundry worker. *Id.* The VE then identified produce weigher, DOT number 299.587-010, approximately 10,000 in the national economy. *Id.*

For hypothetical number two, the ALJ indicated all the limitations in hypothetical one would remain the same except the standing and walking would be reduced to four hours in combination. *Id.* The ALJ asked how these limitations would affect available jobs, and the VE testified these limitations would limit them. *Id.* The VE identified the following jobs: office helper, DOT number 23.567-010, approximately 8,000 in the national economy; stock checker, DOT number 299.667-014, approximately 7,500 in the national economy; route aide, DOT number 239.687-010, approximately 8,000 in the national economy. *Id.* The VE testified all those jobs were classified as light which means standing and walking is not specifically contemplated by the DOT. *Id.* The VE testified based on her experience she significantly reduced the number of jobs she provided to reflect jobs the hypothetical individual could perform. Tr. 52.

For her third hypothetical, the ALJ asked the VE to take the limitations from the first hypothetical and add the further limitation that the hypothetical individual would be off-task 15%

7

or more of a workday in addition to regularly scheduled breaks or would miss two or more days per month. Tr. 52–53. The VE stated that based on her experience, either of those factors singly or in combination, would preclude full time work. Tr. 53. The VE confirmed her testimony was consistent with the DOT, and that anywhere the DOT is silent—such as off-task, absenteeism, changes in sitting and standing, or types of climbing —she provided estimates based on her education and work experience. *Id*.

Plaintiff's counsel asked the ALJ if her limitation of reaching with only the left extremity was intended to make it one arm duty, and the ALJ stated not necessarily, the intent was to account for the reaching limitations Plaintiff testified to. Tr. 53–54.The ALJ also stated she did not ask straight sedentary questions because she is aware Plaintiff would grid at the amended onset date at the sedentary level. Tr. 54.

II.     Discussion

   A.     The ALJ's Findings

In her January 6, 2021 decision, the ALJ made the following findings of fact and conclusions of law:

> 1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2019.
>
> 2.    The claimant did not engage in substantial gainful activity during the period from his alleged onset date of December 13, 2013, through his date last insured of December 31, 2019 (20 CFR 404.1571 *et seq.)*.
>
> 3.    Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the bilateral knees, bilateral carpel tunnel syndrome, right cubital tunnel syndrome, left shoulder arthralgia, affective disorder, and posttraumatic stress disorder (hereinafter PTSD) (20 CFR 404.1520(c)).

The claimant has the following non-severe impairments: hypertension and renal cysts.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps and stairs; he can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He can frequently reach in all directions with the left upper extremity. He can frequently handle and finger bilaterally. He can have no more than occasional exposure to vibration. He can have no exposure to hazards, such as unprotected heights and moving machinery. He can perform simple, routine tasks with a reasoning level of 2 or less, performed in 2-hour blocks of time. He can have no public contact in the work place, and no more than occasional contact with coworkers (he may work in proximity to others but cannot participate in team type activities). He is limited to only occasional, routine changes in work settings and duties.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 7, 1967, and was 46, which is defined as a younger individual age 18-49, on the alleged date of onset. He was age 51 on the amended date of onset, and he was age 52 years old on the date last insured. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's

>age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).
>
>11.    The claimant was not under a disability, as defined in the Social Security Act, at any time from December 13, 2013, the alleged onset date, through December 13, 2019, the date last insured. (20 CFR 404.1520(g)).

Tr. 15–24.

### B.    Legal Framework

#### 1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

>inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW; and (5) whether

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there

the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable

---

are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

        2.        The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the

Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

   C.   Analysis

Plaintiff alleges the following issues: (1) whether the ALJ committed reversible error in failing to consider the longitudinal record as a whole, and (2) whether the ALJ failed to meet her burden at Step Five of the sequential evaluation. ECF No. 10 at 2.

The Commissioner contends substantial evidence supports the ALJ's consideration of the longitudinal record, and the ALJ satisfied her Step Five Burden. ECF No. 11 at 5–8.

   1.   Longitudinal Record

Plaintiff argues the ALJ failed to consider the longitudinal record as a whole. ECF No. 10 at 6. Plaintiff contends he suffers from chronic lower back and neck pain, chronic bilateral knee pain, and PTSD and cites to medical records related to these conditions. *Id.* at 6–7. Plaintiff also contends the ALJ failed to adequately consider certain medical records. *Id.* at 7–11. Plaintiff, however, does not offer any other argument or any substantive legal analysis concerning these conditions or medical records. Nor does Plaintiff identify what Step in the determination of disability process was impacted by the ALJ's failure to consider these records.

This court is not required to rummage through the administrative record to construct and present a well-supported position for Plaintiff. *See Hayes v. Self-Help Credit Union*, No. 1:13-cv-00880, 2014 WL 4198412, at *2 (M.D.N.C. Aug. 22, 2014) (noting it is not the role or responsibility of the court to perform the research needed to support or rebut a perfunctory argument); *Hensley v. Price*, 876 F.3d 573, 581 n.5 (4th Cir. 2017) (explaining "it is not [the court's] job to wade through the record and make arguments for either party."). Courts have held that when a plaintiff raises an issue in such a manner, the issue is deemed waived. *See Parms v.*

13

*Colvin*, No. 1:13-cv-01002, 2015 WL 1143209, at *8 n.10 (M.D.N.C. Mar. 13, 2015) (noting the "Court need not address . . . perfunctory arguments by counsel). Despite the perfunctory and conclusory nature of Plaintiff's arguments, the undersigned addresses the following issues that appear to be raised in Plaintiff's brief.

Plaintiff argues the ALJ failed to consider evidence he suffered from chronic back, neck, and bilateral knee pain and PTSD. ECF No. 10 at 6–7. The ALJ reviewed Plaintiff's medical records and found Plaintiff's severe impairments included degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the bilateral knees, and PTSD. Tr. 18. The ALJ then determined Plaintiff had the RFC to perform light work with certain exertional and postural limitations. Tr. 19–22. As part of her RFC assessment, the ALJ summarized Plaintiff's medical records related to his physical and mental impairments and cited to specific medical facts, opinions, and non-medical evidence to support her RFC. Tr. 19–21. The ALJ considered Plaintiff's allegations regarding his physical and mental limitations and his ADLs and explained Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the objective evidence and medical opinions of record. Tr. 18–21. The ALJ also considered Plaintiff's allegations of pain and concluded that Plaintiff's subjective pain complaints were not fully supported by the objective findings on examination. Tr. 21–22. The ALJ also explained she considered the effects of fatigue and pain in assessing Plaintiff's RFC. Tr. 26. Plaintiff has not shown any error resulting from the ALJ's consideration of his PTSD and chronic pain; this allegation is dismissed.

Plaintiff also argues the ALJ failed to consider certain medical records and presents a chart that sets out medical records from August 2018 to October 2020 containing results of medical testing and medical observations and/or findings. ECF No. 10 at 7–11. However, Plaintiff fails to

offer any argument or explanation as to what, if any, impact these records would have had on the ALJ's disability determination. The regulations require an ALJ to assess a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). An ALJ's findings involving interpretation of medical evidence will be upheld by this court provided they are rational and have sound support in the record. *See Vitek v. Finch*, 438 F.2d at 1157–58. Although the ALJ did not cite to some of the records listed by Plaintiff, most of the information contained in Plaintiff's chosen exhibits was included in the ALJ's opinion. *See* Tr. 20–21. There is "no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]" *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014*)*; *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."). The ALJ properly assessed Plaintiff's medical records in determining the severity of Plaintiff's impairments and developing the RFC. The ALJ's conclusions are supported by substantial evidence. Any error stemming from the ALJ dismissing or declining to discuss certain evidence is harmless.

    2. The ALJ's Step Five Determination

Plaintiff argues the ALJ failed to meet her burden at Step Five of the Sequential Evaluation. ECF No. 10 at 11. Specifically, Plaintiff argues the ALJ failed to consider or mention the VE's opinion that there would be no jobs available if an individual missed two or more days from work or was off task 15% or more during the workday. *Id.* at 11–12.

At Step Five of the sequential evaluation, the Commissioner bears the burden to provide proof of a significant number of jobs in the national economy that a claimant could perform. *Walls v. Barnhart*, 296 F.3d at 290. The VE's testimony is offered to assist the ALJ in meeting this

requirement. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted). For a VE's opinion to be relevant, "it must be based upon a consideration of all other evidence in the record" and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments. *Johnson*, 434 F.3d at 659. An ALJ has discretion in framing hypothetical questions as long as they are supported by substantial evidence in the record. However, if the hypothesis fails to conform to the facts, the VE's testimony cannot constitute substantial evidence in support of the Commissioner's decision. *See Swaim v. Califano*, 599 F.2d 1309, 1312 (4th Cir. 1979).

At the administrative hearing the ALJ used a VE to opine on jobs Plaintiff could perform given his vocational profile. Tr. 48–53. In response to the ALJ's first two hypotheticals, the VE identified jobs at the light, unskilled, level that the hypothetical individual could perform. Tr. 49–52. In response to the ALJ's third hypothetical that included a limitation of being off-task 15% or more of a workday or missing two or more days per month, the VE testified there would not be any jobs available under those limitations. Tr. 52–53.

While questions posed to the vocational expert must fairly set out all the claimant's impairments, the questions need only reflect those impairments supported by the record. *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003). The ALJ is not obligated to accept or rely on the VE's testimony in response to limitations that are not supported by the record. *Youkers v. Colvin*, 2014 WL 906484, at *11 (S.D. W. Va. Mar. 7, 2014). The ALJ considered Plaintiff's hearing testimony and the medical evidence of record in making her RFC determination for light work that did not include a 15% off-task restriction or monthly absences of two or more days. The court finds the ALJ's Step Five finding is supported by substantial evidence.

III.  Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to

determine whether the ALJ's decision is supported by substantial evidence. Based on the foregoing, the undersigned finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also* 42 U.S.C. § 405(g). Therefore, the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

September 8, 2022  Kaymani D. West
Florence, South Carolina  United States Magistrate Judge